IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  20-2632

UNITED STATES OF AMERICA,
Appellee

v.

MARK ERIC ICKER
Appellant

APPEAL FROM A JUDGMENT AND SENTENCE ENTERED IN THE
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT
OF PENNSYLVANIA AT 3:19-CR-0338
(Mannion, J.)

BRIEF OF APPELLEE

DAVID J. FREED
United States Attorney

STEPHEN R. CERUTTI II
Chief, Criminal Appeals
United States Attorney's Office
Middle District of Pennsylvania
Ronald Reagan Federal Building
Suite 220
228 Walnut Street
Harrisburg, Pennsylvania  17108
717-221-4482
Attorneys for Appellee

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF SUBJECT MATTER
    AND APPELLATE JURISDICTION ................................................ 1

STATEMENT OF THE ISSUES
    AND THE STANDARDS OF REVIEW ............................................ 2

STATEMENT OF THE CASE .................................................................. 3

STATEMENT OF RELATED CASES AND PROCEEDINGS ............... 10

SUMMARY OF ARGUMENT .................................................................. 11

ARGUMENT ........................................................................................... 13

I.    Any argument that the district court erred
      in setting a condition of Icker's supervised
      release referencing registration requirements
      under SORNA should be rejected as Icker has
      waived the right to appeal that issue, the district
      court did not do what Icker asserts it did, and
      finally, it would have been proper even if it had
      done so .................................................................................. 13

      A.    Icker knowingly and voluntarily waived
            the right to appeal his conviction and sentence,
            and that includes any conditions of supervised
            release .......................................................................... 13

      B.    The district court did not impose a certain
            SORNA registration requirement as a condition
            of supervised release  .................................................. 18

i

C.     Even if it did impose a mandatory SORNA
registration requirement through its conditions
of supervised release, standing alone, the district
court was entitled to do so ............................................21

CONCLUSION........................................................................................26

CERTIFICATE OF BAR MEMBERSHIP / VIRUS SCAN
    CERTIFICATE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES                                                        PAGE

*United States v. Booker,*
  543 U.S. 220 (2005)............................................................................ 7, 15

*United States v. Delgado,*
  827 Fed.Appx. 180 (3d Cir. Sept. 14, 2020)....................................... 20

*United States v. Goodson,*
  544 F.3d 529 (3d Cir. 2008) ................................................................ 17

*United States v. Gwinnett,*
  483 F.3d 200 (3d Cir. 2007) ................................................................ 14

*United States v. Khattak,*
  273 F.3d 557 (3d Cir. 2001) ............................................................ 2, 14

*United States v. Maurer,*
  639 F.3d 72 (3d Cir. 2011) .................................................................... 2

*United States v. Mickelson,*
  433 F.3d 1050 (8th Cir. 2006)............................................................. 21

*United States v. Miller,*
  594 F.3d 172 (3d Cir. 2010) ................................................................ 22

*United States v. Price,*
  558 F.3d 270 (3d Cir. 2009) ................................................................ 14

*United States v. Roberts,*
  229 Fed. Appx. 172 (3d Cir. 2007)...................................................... 21

*United States v. Sicher,*
  239 F.3d 289 (3d Cir. 2000) ................................................................ 23

*United States v. Wilson,*
  707 F.3d 412 (3d Cir. 2013) .................................................................... 17

## **FEDERAL STATUTES**

18 U.S.C. § 242 ............................................................................ 3, 7, 24

18 U.S.C. § 3231 ...................................................................................... 1

18 U.S.C. § 3553(a) ............................................................................... 22

18 U.S.C. § 3583(d)(1) ........................................................................... 22

18 U.S.C. § 3583(e) ............................................................................... 21

18 U.S.C. § 3742 .................................................................................... 17

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 3742(a) ................................................................................. 1

34 U.S.C. § 20901 ............................................................................. 8, 18

34 U.S.C. § 20911(5)(A) ......................................................................... 22

42 U.S.C. § 16901 ............................................................................... 4, 9

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The United States District Court for the Middle District of Pennsylvania had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 3742(a).

The district court entered its judgment of conviction on July 24, 2020. *Judgment*, Appx3. Icker filed a notice of appeal on August 7, 2020. *Notice of Appeal*, Appx1.

## STATEMENT OF THE ISSUES AND THE STANDARDS OF REVIEW

**I.    Whether the district court's condition of supervised release regarding Icker's potential future registration as a sex offender under SORNA was proper.**

The United States takes the position that Icker waived any objection to the condition of supervised release at issue via execution of an appellate waiver in his plea agreement, as such, this Court should refuse to address the merits of his argument and affirm based upon that waiver. *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).

If the right to this appeal is not deemed waived, this Court generally reviews a district court's decision to impose a particular special condition of supervised release for abuse of discretion. *United States v. Maurer*, 639 F.3d 72, 77 (3d Cir. 2011). Where, as here, however, the defendant fails to object to the special condition at sentencing, review is for plain error. *Id.*

2

## STATEMENT OF THE CASE

*A. Procedural History*

On November 20, 2019, Mark Icker was named as the sole defendant in a two-count criminal information filed in the Middle District of Pennsylvania. *Information*, Appx14. In this information, Icker was charged with two counts of deprivation of rights under color of law in violation of 18 U.S.C. § 242. *Id*.

Icker would ultimately execute a plea agreement with the government and waive his right to indictment. *Plea Agreement*, Appx18; *Waiver of Indictment*, Rec. Doc. No. 6.[1] Pursuant to this plea agreement, on November 26, 2019, Icker pleaded guilty to both counts contained in the criminal information. *Transcript of Guilty Plea*, Appx52; 59-60.

Following a subsequent sentencing hearing, the district court sentenced Icker to, among other things, an aggregate sentence of 180 months in prison consisting of a sentence of 90 months on each count to be served consecutively. *Judgment*, Appx3. Also included in this sentence was the condition of supervised release that Icker "comply with the requirements of the Sex Offender Registration and Notification

---

[1] For documents contained on the district court record but not included in the Appendix, the cite form "Rec. Doc. No." will be used.

Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense." *Id.* at 4, 6.

This appeal followed.

*B. Statement of the Facts*

1. The Offense Conduct.

From March 2018 through early 2019, Icker was a uniformed police officer in Luzerne and Lackawanna Counties. PSR ¶ 3. During this time, Icker engaged in a pattern of attempting to coerce, and in some cases successfully coercing, women into the performance of sex acts upon him via the use of his position as police officer and against their will. PSR ¶¶ 4-59. These acts were aided by Icker's display and possession of his service firearm at all times during his interactions with his victims. PSR ¶ 7.

Specifically, on December 9, 2018, at approximately 11:15pm, Icker stopped victim R.V. while she was driving alone. PSR ¶ 9. During the stop, Icker claimed to discover escalating issues with R.V.'s driving and criminal record, and announced he believed she was operating

4

under the influence. PSR ¶¶ 10-11. After handcuffing R.V. and searching her car, Icker announced he had found a pill bottle containing more than one type of pill and that this constituted felonious "misbranding." PSR ¶ 12. AT this point Icker began a series of thinly veiled inquiries as to what R.V. could do to "help him help her," dismissing offers to arrange controlled drug purchases as not really being helpful. PSR ¶ 13. When R.V. inquired if Icker meant sexual favors, R.V. was told such actions were up to her. PSR ¶ 14. R.V. by this point had begun crying, felt as if she were having a panic attack, but was afraid to run for fear she would be shot. PSR ¶¶ 15-16.

After R.V. assented to go along with Icker's wishes, he transported her first to a police station where no other officers were present and then to a secluded park. PSR ¶ 18. R.V. then asked Icker if he wanted a "hand job," but he responded saying he wished to have her perform oral sex. *Id.* R.V. engaged in the coerced oral sex until Icker ejaculated, at which point he asked her when they could "meet up again for the rest of the payment." PSR ¶ 19.

Just a week prior to this, on December 2, 2018, Icker had stopped another woman, S.R., at approximately 11:30pm as she was driving

alone. PSR ¶ 24. Icker insisted that he smelled marijuana in her car and used this as justification for removing her from the car, handcuffing her and seizing her telephone. PSR ¶ 25. After a search of the car apparently revealed a smoked blunt, Icker placed S.R. in his vehicle. PSR ¶ 26. After summarizing possible problems this discovery could present for S.R., Icker said he would have her car towed, but then asked how she could "help him help her." PSR ¶¶ 27-29. S.R. initially said she could not offer money, but Icker indicated that was not what he wanted. PSR ¶ 30. When Icker would not directly acknowledge he was seeking sexual favors, S.R. told him she could not have sex as she was menstruating. PSR ¶ 31. Icker responded by telling her she could "suck [his] dick." *Id.* While S.R. initially refused, when she was taken back to the police station (where they were the only two people present), she eventually gave in to Icker's demands. PSR ¶¶ 33-36.

In addition to the two above instances which supported Icker's counts of conviction, Icker also unsuccessfully attempted to coerce three other victims into performing sex acts/and or beginning a relationship with him via his authority as a police officer. PSR ¶¶ 43-58.

2. <u>The Indictment and Plea</u>.

On November 20, 2019, Icker was named as the sole defendant in a two-count criminal information filed in the Middle District of Pennsylvania. *Information*, Appx14. In this information, Icker was charged with two counts of deprivation of rights under color of law in violation of 18 U.S.C. § 242. *Id.*

Icker would ultimately execute a plea agreement with the government, and waive his right to indictment. *Plea Agreement*, Appx18; *Waiver of Indictment*, Rec. Doc. No. 6.

As relevant to this appeal, the plea agreement Icker signed contained a direct appeal waiver that set forth as follows:

> [t]he defendant knowingly waives the right to appeal the conviction and sentence. This waiver includes any and all possible grounds for appeal, whether constitutional or non-constitutional, including, but not limited to, the manner in which the sentence was determined in light of *United States v. Booker*, 543 U.S. 220 (2005).

*Plea Agreement*, Appx46.

In addition, in the plea agreement Icker agreed to recommending that the base offense level for his two crimes being 30 due to his "sexual offenses." *Id.* at 27.

Pursuant to this plea agreement, on November 26, 2019, Icker pleaded guilty to both counts contained in the criminal information. *Transcript of Guilty Plea*, Appx52; 59-60.

### 3. Sentencing

Following Icker's guilty plea, the United States Probation Office conducted a pre-sentence investigation and assembled a pre-sentence report. PSR.  For four of the five criminal act "groups" assessed by the probation office in arriving at an offense level, the probation office used guidelines pertaining to either sexual assault or sexual contact. PSR ¶¶ 67, 74, 81, 88. Ultimately, the probation office calculated a total offense level of 37, and assigned Icker a criminal history category of I. PSR ¶¶ 108, 111. This led to an advisory guideline range of 210-240 months. PSR ¶ 140.

The PSR also indicated that the following mandatory condition of supervised release was applicable:

> You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense.

PSR ¶ 28.

Icker did not file any objections to the pre-sentence report. PSR Addendum.

Following a subsequent sentencing hearing, the district court sentenced Icker to, among other things, an aggregate sentence of 180 months consisting of a sentence of 90 months on each count, to be served consecutively. *Judgment*, Appx3. Also included in this sentence (as both a mandatory and "additional" condition) was the condition of that Icker "comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense." *Judgment,* Appx4, 6. At no time did Icker object to the imposition of this condition of his supervised release. Nonetheless, this appeal followed.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Counsel for the United States is not aware of any case or proceeding pending before this Court or any other court or agency, state or federal, which is in any way related to the instant case.

## **SUMMARY OF ARGUMENT**.

I.    The sole claim Icker raises on appeal fails for three separate reasons. First, by virtue of a broad appellate waiver contained in his plea agreement, Icker has waived the right to appeal this issue to this Court. This Court has unequivocally stated that a challenge to a condition of supervised release is a challenge to a sentence, and the language of Icker's appeal waiver barred appeal of either his conviction or sentence.

Second, the district court did not impose the requirement that Icker claims it did. The plain language of the conditions of supervised release that Icker complains of make clear that the district court was only requiring registration under SORNA if it was determined to be necessary by a third party agency. Such language has been deemed by this Court to give the condition a very different meaning than Icker asserts.

Finally, even if the district court had imposed the requirement Icker complains of, it would have been justified and legally able to do so as there can be no doubt that the crimes Icker admitted to committing involved sex abuse, and thus any SORNA registration requirement

would be "reasonably related" to those crimes, and that is all that is required.

## ARGUMENT

I.   **Any argument that the district court erred in setting a
condition of Icker's supervised release referencing registration
requirements under SORNA should be rejected as Icker has
waived the right to appeal that issue, the district court did not
do what Icker asserts it did, and, finally, it would have been
proper even if it had done so.**

In his opening brief, Icker asserts only a single claim: that the
district court erred by requiring him to register under SORNA as part
of the conditions of his eventual supervised release, despite his failure
to object to the imposition of this condition. *Icker Br.* at 9-12. This claim
fails for three separate reasons that will be discussed further below.
First, Icker has waived the right to appeal this issue to this Court.
Second, the district court did not impose the requirement that Icker
claims it did. Finally, even if the district court had imposed the
requirement Icker complains of, it would have been justified and legally
able to do so.

> A. *Icker knowingly and voluntarily waived the right to appeal his
> conviction and sentence, and that includes any conditions of
> supervised release.*

Before turning to the merits (or lack thereof) of Icker's appeal, this
Court must first address whether the appeal is even properly before this
Court in light of the inclusion of a broad appellate waiver in Icker's plea

agreement. In *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001),

this Court held that waivers of appeal must be strictly construed, but

are valid so long as they are entered into knowingly and voluntarily.

*Id.* at 562. Such waivers extend even to meritorious claims. *Id.* at 561-

62. The *Khattak* Court did note, however, that "[t]here may be an

unusual circumstance where an error amounting to a miscarriage of

justice may invalidate the waiver." *Id.* at 562. This Court has

repeatedly reaffirmed *Khattak* and enforced appeal waiver provisions of

plea agreements so long as the defendant's agreement to the appeal

waiver provision, like the plea itself, was knowingly and voluntarily

made. *See United States v. Gwinnett*, 483 F.3d 200 (3d Cir. 2007);

*United States v. Price*, 558 F.3d 270 (3d Cir. 2009).

On November 15, 2019, Icker agreed to plead guilty to both counts

with which he had been charged. *Plea Agreement*, Appx18. As part of

the plea agreement, Icker agreed to a direct appeal waiver which set

forth the following:

> 28. Appeal waiver – Direct. The defendant is aware that
> Title 18, United States Code, Section 1291 affords a defendant the
> right to appeal a judgment of conviction and sentence; and that
> Title 18, United States Code, Section 3742(a) affords a defendant
> the right to appeal the sentence imposed. Acknowledging all of
> this, the defendant knowingly waives the right to appeal the

14

conviction and sentence. This waiver includes any and all possible grounds for appeal, whether constitutional or non-constitutional, including, but not limited to, the manner in which that sentence was determined in light of *United States v. Booker*, 125 S. Ct. 738 (2005). The defendant further acknowledges that this appeal waiver is binding only upon the defendant and that the United States retains its right to appeal in this case.

*Id.* at 46.

On November 26, 2019, the district court conducted Icker's initial appearance, arraignment and guilty plea entry. *Plea Transcript*, App. 52.

During the course of this hearing, the district court:

- Ensured Icker's competency to enter his plea. *Id.*, at 52;

- Ensured Icker's satisfaction with his representation. *Id.*; and

- Ensured Icker understood the trial rights he was giving up. *Id.*, at 52-54.

The district court then had the government summarize the terms of the plea agreement. *Id.* at 55-56. As part of this summary, the AUSA handling the proceeding explained that there was a direct appeal waiver in the agreement. *Id.*, at 56. After this summary, Icker acknowledged to the court that his understanding of the plea agreement was as stated by government counsel, and that he was pleading guilty voluntarily. *Id.*, at 56-57.

After ensuring that Icker understood the plea agreement was not binding on the court with regard to the ultimate sentence, the district court directly asked Icker if he was voluntarily giving up his direct appeal rights, and Icker responded "yes." *Id.*, at 57. The district court ultimately accepted Icker's plea of guilty. *Id.*, at 60.

Based on the above, there can be little question that Icker knowingly and voluntarily waived his right to appeal his conviction and sentence as part of his plea agreement with the government. As such, that waiver should be enforced so as to ensure that the United States receives at least some portion of the benefit of its bargain—the promise that it would not be required to expend its resources defending an appeal.

With regard to the appellate waiver, Icker does not argue that enforcing it would work a miscarriage of justice, but rather asserts that he did not waive the right to this appeal at all. *Icker Br.* at 1-2. In making this claim he asserts that he only waived the right to appeal his conviction and/or sentence, and that such a waiver does not cover his claim because the claim is "directed at a *civil* collateral consequence" – SORNA registration. *Id.* (emphasis in original). A review of Icker's

opening brief, however, reveals that he is not challenging SORNA itself, is not challenging the regulatory implementation of SORNA in a particular state, and is not challenging the application of SORNA.

Instead, Icker makes it quite clear that the error he asserts pertains to the imposition of particular conditions of supervised release, stating "the imposition of the SORNA registration requirement as a condition of supervised release was an obvious error since the elements of the civil rights conviction did not meet the statutory definition of 'sex offense'." *Icker Br.* at 11 (emphasis added). This is fatal to any claim that his direct appeal waiver does not apply here.

As this Court has previously held, "the word 'sentence' in a broad appellate waiver ... includes the terms and conditions of supervised release and, therefore, bars appeals challenging those terms and conditions." *United States v. Wilson*, 707 F.3d 412, 414 (3d Cir. 2013) (citing *United States v. Goodson*, 544 F.3d 529, 538 (3d Cir. 2008) (by referencing 18 U.S.C. § 3742 in the plea agreement, it was clear that "the duration, as well as the conditions of supervised release are components of a sentence. By waiving his right to take a direct appeal of

his sentence, Goodson waived his right to challenge the conditions of his supervised release, which were by definition a part of his sentence."))

While it may very well be true that Icker's appeal is "directed" at avoiding a potential civil collateral consequence of his convictions as he asserts in his brief, the mechanism by which he is trying to effectuate that avoidance is through a challenge to the conditions of his supervised release. Under the precedent cited above, he has waived the right to do so knowingly and voluntarily and thus this Court should reject consideration of his claim and affirm the sentence imposed by the district court.

### B. The district court did not impose a certain SORNA registration requirement as a condition of supervised release.

Even if Icker did not waive his right to take this appeal, he faces another fatal hurdle to asserting his claim that the district court improperly made it mandatory that he register as a sex offender under SORNA: namely the fact that it did no such thing. In looking at Icker's judgment of conviction, the potential for SORNA registration is discussed in two separate conditions for supervised release. First, under "Mandatory Conditions" Icker was informed he "must comply with the requirements of the Sex Offender Registration and Notification Act (34

18

U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense." *Judgment*, Appx4. Second  under "Additional Supervised Release Terms" Icker was informed of exactly the same requirement using the exact same words. *Id.* at 6.[2]

The precise wording is important because the district court does not simply say "You must register as a sex offender pursuant to SORNA" as Icker's argument implies, but rather imposes a conditional directive to comply with SORNA only "*as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency.*" Because of this conditional language, and contrary to the premise put forth in Icker's brief, the district court was expressly *not* itself imposing any requirement that he register pursuant to SORNA. Instead, the district court made registration under SORNA conditional on a determination by others.

---

[2]    This requirement was also read to Icker during his sentencing. Transcript of Sentencing, Appx67.

This is not a distinction without a difference, as a panel of this court has previously concluded – albeit in an unpublished opinion. In *United States v. Delgado*, 827 Fed.Appx. 180 (3d Cir. Sept. 14, 2020) (not precedential) a panel of this Court was presented with an almost identical claim of an improperly imposed SORNA registration requirement that used the exact same language as the conditions of supervised release at issue here. *Id.* at 183-84. In reaching its decision, the *Delgado* panel stated flatly:

The District Court did not abuse its discretion because it did not commit the error that Delgado asserts. The Judgment and Commitment Order does not mandate that Delgado register as a sex offender under SORNA. Rather, it requires Delgado to comply with SORNA "as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where [he] reside[s], work[s], [is] a student, or [was] convicted of a qualifying offense."

*Id.* The *Delgado* panel went on to note that there was no indication whether the Probation Office, the Bureau of Prisons or any state agency has required Delgado to register. *Id.* at n.3. Likewise, there is no such evidence in the instant record as to whether Icker has actually been required to register. Nor has there been any attempt in this case to challenge any determination made by the probation office or otherwise clarify the import of the condition of release in light of the probation

20

office's determination, despite the existence of a vehicle to do so in 18

U.S.C. § 3583(e) pertaining to modifications of conditions of release. *See*

*United States v. Roberts*, 229 Fed. Appx. 172, 178 (3d Cir. 2007) (not

precedential) ("Although § 3583(e) cannot be used as a backdoor to

challenge the legality of a condition of release, it may be used to

challenge the arbitrary or unfair application of a condition of release by

the probation office." (citing *United States v. Mickelson*, 433 F.3d 1050,

1057 (8th Cir. 2006)). As such, there is no basis for this Court to review

any determination by the probation office in this appeal (if one has even

been made), and Icker's challenge to the district court's supervised

release term as imposed is misplaced.

> C. *Even if it did impose a mandatory SORNA registration*
> *requirement through its conditions of supervised release,*
> *standing alone, the district court was entitled to do so.*

Even if one were to (1) ignore Icker's blanket appellate waiver of

any issues regarding his conviction and sentence; (2) ignore the actual

wording of the condition at issue and find that the district court

compelled Icker to register pursuant to SORNA, and (3) hold that

Icker's offenses of conviction do not expressly require SORNA

registration, it would still not mean that imposition of any requirement

that Icker register under SORNA constituted error.

No provision in SORNA limits registration as a sex offender to

*only* those convicted of offenses falling under the definition provided at

34 U.S.C. § 20911(5)(A), rather it only addresses where such

registration is statutorily mandatory. There may, of course, be

instances where registration may not be made mandatory under

statute, but where a sentencing court nonetheless deems registration

warranted.

As this Court stated in *United States v. Miller*, 594 F.3d 172 (3d

Cir. 2010):

> Section 3583 authorizes a sentencing court to impose a
> condition of supervised release "to the extent that such condition-
> (1) is reasonably related to the factors set forth in [18 U.S.C. §
> 3553(a)]; [and] (2) involves no greater deprivation than is
> reasonably necessary for the purposes set forth in section [3553(a)
> ]...." 18 U.S.C. § 3583(d)(1) & (2).

> The relevant factors, as delineated in § 3553(a), are as
> follows:

> > (1) the nature and circumstances of the offense and the
> > history and characteristics of the defendant;
> > (2) the need for the sentence imposed—
> > * * *
> > (B) to afford adequate deterrence to criminal conduct;

22

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

*Id.* at 183. A sentencing judge is given wide discretion in imposing terms of supervised release, but it must be "reasonably related" to factors above. *Id.* It is not necessary that all the factors above be present. *Id.* (quoting *United States v. Sicher*, 239 F.3d 289, 291 (3d Cir. 2000)).

In the instant case, even if one accepts Icker's argument that SORNA does not mandate registration for his statute of conviction, the facts of this case demonstrate that his criminal acts were "reasonably related" to the sexual abuse of women, and thus the imposition of SORNA registration requirements were squarely within the discretion of the district court.

Icker's relevant convictions may have been for the deprivation of rights under the color of law – specifically through the use of his authority as a police officer – but the object of that deprivation and abuse was the coercion of sexual favors from women over whom he asserted his official authority. As was detailed in the statement of facts

above, and through the uncontested facts presented in the PSR, Icker

engaged in an *admitted* pattern of behavior wherein he sought to

maneuver women into isolation and create situations where he could

use his authority as a law enforcement officer to coerce them into, at

best, giving him their phone numbers in the hopes of initiating a

relationship and, at worst, performing sexual favors on him. See PSR

¶¶ 4-59.

There can be no question that from the outset of this prosecution,

Icker knew that the charges against him were "related" to his sexual

abuse of his victims. While the statutory elements of 18 U.S.C. §242 do

not touch upon sexual abuse themselves, the information filed in this

case made it explicit that the charges grew out of Icker's unwanted

sexual contact with his victims. *Information*, Appx14.

As a result of the above, even if the statutory elements of Icker's

offenses of conviction do not specifically involve sexual abuse, the facts

of this case make clear that his crimes were "reasonably related" to such

abuse. As such, the imposition of a SORNA registration requirement

would be reasonably related to the nature and circumstances of the

offense. The requirement would stand as a potential deterrent to others

who might consider abusing their authority to procure sexual favors. The requirement would protect the public from an admitted offender who used his authority to coerce women into unwanted sexual contact. That is all that is needed to justify the district court's imposition of the conditions of supervised release imposed in this case. Icker's sentence should be affirmed.

## CONCLUSION

The United States of America respectfully requests that this

Honorable Court affirm the conviction and sentence entered by the

district court in this case.

DAVID J. FREED
United States Attorney


STEPHEN R. CERUTTI II
Assistant United States Attorney
Chief, Criminal Appeals
United States Attorney's Office
Middle District of Pennsylvania
Ronald Reagan Federal Building
Suite 220
228 Walnut Street
Harrisburg, Pennsylvania  17108
717-221-4482

## CERTIFICATE OF COUNSEL

I, Stephen R. Cerutti, certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief consists of 4,437 words and does not exceed the 14,000 word limit.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

## IDENTICAL PDF & HARD COPY CERTIFICATE

The undersigned hereby certifies that the PDF file and Hard Copies of this brief are identical.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

## VIRUS SCAN CERTIFICATE

This e-mail and the attached brief has been automatically scanned during preparation and upon sending by the following virus detection programs: OfficeProtect/Inoculan, ScanMail, and Viruswall, and no viruses were detected.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **Appellee** | : | |
| | : | **No. 20-2632** |
| **v.** | : | |
| **MARK ERIC ICKER** | : | |
| **Appellant** | : | |

## CERTIFICATE OF SERVICE

The undersigned certifies that she has this date, **December 8, 2020,** served two copies of the foregoing

## BRIEF OF APPELLEE

by first class mail as follows:


Frederick W. Ulrich, Esquire
FEDERAL PUBLIC DEFENDER'S OFFICE
100 Chestnut Street
Suite 306
Harrisburg, PA    17101


/s/ Cindy J. Long
CINDY J. LONG
Legal Assistant